# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| DONNA M. UNDERBERG, as Personal Representative of the Estate of Thomas J. Underberg and as Personal Representative on behalf of Donna M. and Mark G. Underberg,<br><br>Plaintiff,<br><br>vs.<br><br>EMPLOYERS MUTUAL CASUALTY COMPANY,<br><br>Defendant. | CV-15-112-BLG-CSO<br><br>**ORDER DENYING MOTION TO CHANGE VENUE** |

Plaintiff Donna M. Underberg, in the capacities stated in the above caption ("Underberg"), alleges a spoliation of evidence claim against Defendant Employers Mutual Casualty Company ("EMC"). *Cmplt. (ECF No. 1) at 4-6*.[1] Underberg claims that EMC wrongfully disposed of a pickup truck that was relevant evidence in potential civil lawsuits. *Id. at 3-4*.

---

[1] "ECF No." refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3*. Any references to page numbers are to those assigned by the electronic filing system.

On February 22, 2016, with the parties' written consent, this case was assigned to the undersigned for all purposes. *Notice of Assignment to U.S. Magistrate Judge (ECF No. 10)*. Pending is EMC's motion to transfer venue from this Court to the District of North Dakota under 28 U.S.C. § 1406(a) and Rule 12(b)(3), Fed. R. Civ. P.[2] *Answer (ECF No. 4) at 2*.

EMC made the motion in its Answer, but separately and simultaneously filed a supporting brief. *EMC's Supporting Br. (ECF No. 5)*. Underberg filed a response brief, and EMC filed a reply brief. *Underberg's Resp. Br. (ECF No. 8); EMC's Reply Br. (ECF No. 11)*. Having considered the parties' arguments and submissions, for the reasons discussed below, the Court will deny EMC's motion to change venue.

EMC moved in the alternative for application of North Dakota law to this case, and to stay this action pending resolution of a lawsuit filed by Underberg against the pickup's manufacturer in the Montana Seventh Judicial District Court, Cause No. DV 15-077. *Id*. Because

---

[2] References to rules are to the Federal Rules of Civil Procedure unless otherwise noted.

EMC's brief supporting its motion to transfer venue addresses neither the motion to apply North Dakota law nor the motion to stay, those motions also will be denied, with leave to renew.

I. **Background**[3]

On November 6, 2012, Thomas J. ("TJ") Underberg was driving a 2010 Dodge Ram 3500 pickup truck ("the pickup") eastbound on North Dakota Highway 1804 near Trenton, North Dakota. Cross Petroleum Services ("Cross Petroleum"), a Montana corporation, owned the pickup. EMC, an Iowa insurance company licensed to conduct business in Montana, insured the pickup for Cross Petroleum. While TJ was driving the pickup, it crossed the center line and collided with a semi-tractor pulling a loaded trailer. TJ was killed.

EMC took control of the pickup. EMC notified Cross Petroleum that the pickup was at a salvage yard. Salvage yard personnel reported that the pickup was "gruesome" and had no useable parts. EMC notified Cross Petroleum that the pickup would be disposed of by the

---

[3]The background facts are from Underberg's Complaint, EMC's Answer, and the parties' submissions related to the motion at hand. The facts are undisputed except where indicated.

salvage yard where it was towed after the collision.

Underberg asserts that "EMC[ ] did not give Cross Petroleum an adequate opportunity to retain the salvage, and directed the truck 'would be disposed of.'" *ECF No. 1 at ¶ 13.* EMC denies this assertion and maintains that Cross Petroleum did not request that the vehicle be preserved and that neither Cross Petroleum nor anyone else notified EMC of any contemplated civil claim or action against the pickup's manufacturer for any claim that would require preservation of the evidence. *ECF No. 4 at ¶ 10.*

EMC did not notify TJ's family of its intent to dispose of the pickup. But, EMC maintains, no one on TJ's behalf requested that EMC retain the pickup nor did anyone on his behalf give EMC notice that any civil action or claim was contemplated against the pickup's manufacturer. *Id. at ¶ 10.*

Underberg maintains that, at the time the pickup was disposed of, it was well known that the left outer tie rods of certain Dodge Ram pickups were defective and that the pickup TJ was driving was "identified as defective by Dodge prior to November 12, 2012." *ECF No.*

*1 at ¶ 11.* EMC disputes this allegation and

> affirmatively alleges that at the time of the accident, it was unaware of any outstanding factory recalls and in fact understands and believes that the factory recall notice which [Underberg] allege[s] in a separate suit against the manufacturer, recall Notice L16, had not been completed had in truth and in fact been completed well prior to the accident. Recall L16 was completed December 19, 2011, approximately a year prior to the accident. Further, Defendant [EMC] affirmatively alleges upon information and belief that at the time of the accident there were no outstanding recall notices with respect to any steering mechanism or tie rod component of the subject vehicle.

*ECF 4 at ¶ 8.*

Underberg filed this action on November 5, 2015, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332 and asserting a spoliation of evidence claim. Underberg claims that EMC wrongfully disposed of the pickup when EMC either knew or should have known that it was evidence in potential civil actions pursued by the semi-tractor driver for property damage and by TJ's estate on the theory that the pickup's left outer tie-rod fractured causing TJ to lose control and collide with the semi-tractor. *ECF No. 1 at 2, 4-6.*

In asserting that venue is proper in the District of Montana, Underberg states in the Complaint that: (1) EMC issued Cross

Petroleum's insurance policy in Montana, *id. at 2*; (2) "the substantial events and/or omissions giving rise [to] this claim occurred in Dawson County, State of Montana[,]" *id.*; and (3) "[v]enue is appropriate in this judicial district under 28 U.S.C. § 1391(b) because the events that gave rise to this Complaint occurred in this district[,]" *id*.

## II. <u>Parties' Arguments</u>

EMC argues that venue in Montana is improper. Rather, EMC argues, venue is proper in North Dakota under 28 U.S.C. § 1391(b)(2) "because all of the events or omissions giving rise to [Underberg's] claim occurred in the District of North Dakota." *ECF No. 5 at 2*. Such events and omissions occurring in North Dakota, it argues, include: (1) TJ driving the pickup; (2) the pickup's collision with the semi-tractor; (3) towing of the pickup by a North Dakota towing company to a yard in North Dakota; (4) a North Dakota EMC senior claims adjuster adjusting the first party and third party claims that arose from the collision; and (5) disposal of the pickup in North Dakota. *Id. at 5-6*. Because venue in Montana is improper, EMC argues, 28 U.S.C. § 1406(a) allows the Court to transfer the case "to any district or division

in which it could have been brought." *Id. at 2*. And, EMC argues, because the case could have been brought in the District of North Dakota as the place where all events pertinent to Underberg's claim occurred, the Court should transfer venue of the action to North Dakota. *Id. at 3-7*.

Underberg responds that venue properly lies in Montana. *ECF No. 8 at 1*. First, she argues that this case is brought by Montana citizens. Second, Underberg argues that venue is proper in Montana under 28 U.S.C. § 1391(b)(1) because EMC resides in Montana. She argues that EMC is a Montana resident under § 1391(b)(1) because EMC: (1) is licensed to conduct business in Montana; (2) issued the insurance policy to Cross Petroleum in Montana; and (3) has a website stating that more than 20 Montana insurance offices are authorized to provide EMC insurance services in Montana. *Id*. Thus, Underberg argues, because EMC resides in Montana, venue is proper in Montana under § 1391(b)(1). *Id. at 5*. Underberg further argues that EMC is also deemed to reside in Montana under 28 U.S.C. § 1391(c)(2) because it is subject to personal jurisdiction in Montana. *Id*. And, she argues,

even if EMC was not subject to personal jurisdiction in Montana, it has waived that defense under Rule 12(h) because it has failed to timely raise it.

Third, Underberg argues that venue is proper in Montana under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to her claim against EMC occurred in Montana. *Id.* She argues that: (1) she and TJ were, at all relevant times, citizens and residents of Montana; (2) EMC, which is licensed and does business in Montana, insured the vehicle driven by TJ in Montana, and has authorized agents throughout Montana; (3) after the collision in which TJ died, EMC took possession of the pickup on behalf of Cross Petroleum, a Montana corporation; (4) EMC placed several phone calls to Greg Cross of Cross Petroleum, in Montana, concerning disposal of the pickup; (5) EMC contacted Donna Underberg, in Montana, before disposing of the pickup; (6) on December 4, 2012, EMC issued payment to Cross Petroleum, in Montana, to have title to the pickup transferred from Cross Petroleum to EMC; and (7) the harm Underberg suffered occurred in Montana, "specifically in the Montana Seventh Judicial

District Court, because that is the location of the harm caused by [EMC's] spoliation of evidence." *Id. at 7-8*.

In reply, EMC first argues that Underberg has failed to carry her burden of establishing that venue is proper in Montana because her Complaint premises venue solely on 28 U.S.C. § 1391(b)(2). EMC argues that Underberg has failed to offer any factual allegations demonstrating that a substantial portion of the events giving rise to her spoliation claim occurred in Montana. *ECF No. 11 at 3-8*. Rather, it argues, Underberg has made factual allegations that are merely "insubstantial events that may have occurred in Montana but are immaterial to [Underberg's] claim." *Id. at 7* (emphasis omitted).

Second, EMC argues that Underberg's Complaint premised venue solely on § 1391(b)(2) and she may not now advance a new theory of § 1391(b)(1) residential venue neither alleged nor factually supported in her Complaint. *Id. at 2, 10-11*. But, EMC argues, even if Underberg is permitted to assert this new theory in her response brief, she has not provided sufficient factual allegations to show that residential venue exists in Montana. *Id. at 11-14*. It argues that Underberg's Complaint

has not met its burden of alleging that EMC's contacts in Montana sufficiently establish general personal jurisdiction in Montana. *Id. at 12*. And, EMC argues, Underberg's Complaint also fails to allege sufficient facts to confer specific personal jurisdiction over EMC in Montana for the spoliation claim at issue in this case. *Id. at 12-14*.

### III. Discussion

#### A. Legal Standard

Rule 12(b)(3) allows a defendant to challenge a complaint for improper venue. When a court considers a Rule 12(b)(3) motion, "[the] pleadings need not be accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

Once venue is challenged, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Martensen v. Koch,* 942 F.Supp.2d 983, 996 (N.D. Ca. 2013). And, 28 U.S.C. § 1406(a) provides that the "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest

of justice, transfer such case to any district or division in which it could have been brought." Whether to dismiss for improper venue or to transfer a case to a proper court is within the district court's sound discretion. *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

With certain exceptions not relevant here, 28 U.S.C. § 1391 "governs the venue of all civil actions brought in district courts of the United States[.]" 28 U.S.C. § 1391(a)(1). Section 1391(b) provides that, in general:

> A civil action may be brought in –
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

As noted, only sections 1391(b)(1) and (2) are at issue in the case

at hand.  Respecting section 1391(b)(1)'s reference to whether a defendant resides in a particular judicial district, section 1391(c)(2) provides, in relevant part, that:

> (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]

28 U.S.C. § 1391(c)(2).

Respecting section 1391(b)(2), only those events or omissions "that directly give rise to a claim are relevant . . . [and] only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).  But a "substantial part of the events or omissions" does not mean that the events in that district predominate or that the chosen district is the "best venue." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003); *see also Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) ("[I]n determining whether events or omissions are sufficiently substantial to support venue . . ., a court should not focus only on those matters that are in dispute or that directly led to the filing of the

action. . . . Rather, it should review 'the entire sequence of events underlying the claim.'") (citations omitted); *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998). "In some cases, venue will be proper in more than one district." *Hartford Cas. Ins. Co. v. SANY America, Inc.*, 991 F.Supp.2d 1303, 1305 (N.D. Ga. 2014) (*citing Jenkins Brick*, 321 F.3d at 1371); *see also Mitrano*, 377 F.3d at 405 (noting that "it is possible for venue to be proper in more than one judicial district").

"The 'substantiality' requirement is 'intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" SCHWARZER, TASHIMA & WAGSTAFFE, *Federal Civil Procedure Before Trial* at ¶ 4:325 (2015) (*quoting Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 2914 (3d Cir. 1994) and *citing Gonsalves-Carvalhal v. Aurora Bank, FSB*, 2014 WL 201502, *7 (E.D. N.Y. 2014)). Also, "[i]n determining where a 'substantial part' of the 'events or omissions' occurred, most courts look 'not to a single "triggering event" prompting the action, but to the entire sequence of events underlying the claim.'" *Id*. at ¶ 4:325.1 (*quoting Uffner v. La Reunion Francaise, S.A.*, 244 F.3d

38, 42 (1ˢᵗ Cir. 2001) and *citing First of Michigan*, 141 F.3d at 264 (emphasis omitted)).

B.  Analysis

Applying the foregoing authority, the Court concludes that it must deny EMC's motion to transfer venue. Venue is proper in the District of Montana both because EMC resides in Montana for purposes of 28 U.S.C. § 1391(b)(1), and because a substantial part of the events giving rise to the claim occurred in Montana for purposes of 28 U.S.C. § 1391(b)(2).

Turning first to § 1391(b)(1), as noted above, venue is proper in a judicial district in which any defendant resides. Section 1391(c)(2) provides that an entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question...."[4] EMC has not challenged this Court's jurisdiction and, under Rule 12(h)(1), has waived its right to do so. Thus, it is subject to this Court's personal jurisdiction in this civil

---

[4]This statute was amended in 2011, when the language "with respect to the civil action in question" was added. Pub.L. 112-63, Title II, § 202, Dec. 7, 2011, 125 Stat. 763.

action.  In 14D Wright & Miller, Federal Practice and Procedure §3811.1 at 296, the authors conclude that "if an entity defendant waives its right to object to personal jurisdiction, it has ipso facto consented to venue under this statute."  In *Sentry Select Inc. Co. v. McCoy Corp.,* 980 F.Supp.2d 1072, 1077 (W.D. Wis. 2013), the court first rejected defendants' claim that the court lacked personal jurisdiction over them.  The court then rejected defendants' venue challenge, finding that in light of the court's ruling on personal jurisdiction, "both defendants are, therefore, residents of the Western District of Wisconsin for venue purposes" under sections 1391(b)(1) and 1391(c)(2).

Some courts reached this conclusion even before 2011, when section 1391(a) required that the corporate defendant be subject to personal jurisdiction when the action was commenced.  *See, e.g., Duke Energy Indus. Sales, LLC v. Massey Coal Sales Co., Inc.,* 2011 WL 4744907 (S.D. W. Va.) ("The Court finds venue is proper here because Defendant is a corporation that is subject to personal jurisdiction, by its waiver, in this District"); *Thomas v. Lockheed Martin Corp.,* 2006 WL

1174026 *2 (D. Kan.) (holding that because defendant had not timely asserted that the court lacked personal jurisdiction, the claim of improper venue had been waived). On this basis, the Court concludes that venue is proper under subsection 1391(b)(1).

Even if venue were not proper under that subsection, the Court concludes that venue is proper under subsection 1391(b)(2). The Court is mindful that it cannot reasonably be disputed that a substantial part of the events or omissions giving rise to Underberg's claim of spoliation occurred in North Dakota. After all, North Dakota was the place where: (1) TJ was driving the pickup; (2) the collision occurred; (3) TJ was killed; (4) the pickup sustained damages rendering it unsalvageable; (5) a towing company brought the pickup to a storage yard; (6) an EMC adjuster adjusted claims arising out of the collision for its insured; (7) EMC took possession of the pickup when its insured decided not to retain it; and (8) the towing company disposed of the pickup.

But those undisputed facts, which demonstrate that venue may also be proper in the District of North Dakota, are not exclusively

determinative of the issue of whether venue also properly lies in the District of Montana. As noted above, venue may be proper in more than one district. *Mitrano*, 377 F.3d at 405; *Jenkins Brick*, 321 F.3d at 1371; *Hartford Cas. Ins. Co.*, 991 F.Supp.2d at 1305. Other undisputed facts relevant to Underberg's spoliation of evidence claim share a nexus with Montana.

In considering those facts, the Court must begin with the contours of the spoliation of evidence claim. In Montana, "the tort of spoliation of evidence, which may be negligent or intentional, [is] an independent cause of action with respect to third parties who destroy evidence." *Oliver v. Stimson Lumber Company*, 993 P.2d 11, 18 (Mont. 1999). The tort consists of the following elements:

> (1) existence of a potential civil action;
> (2) a legal or contractual duty to preserve evidence relevant to that action;
> (3) destruction of that evidence;
> (4) significant impairment of the ability to prove the potential civil action;
> (5) a causal connection between the destruction of the evidence and the inability to prove the lawsuit;
> (6) a significant possibility of success of the potential civil action if the evidence were available; and
> (7) damages[.]

*Id. at 19* (citations omitted).

In addition, the court in *Oliver* affirmed the well-known principle that "to prevail in a tort action, a plaintiff must show by a preponderance of evidence that the defendant breached a legal duty to the plaintiff and that the breach was the cause of the plaintiff's damages." *Id. at 19-20* (citations omitted). Thus, the court set forth ways in which the duty element of the cause of action may arise as follows:

> A duty to preserve evidence may arise in relation to a third-party spoliator where:
>
> (1) the spoliator voluntarily undertakes to preserve the evidence and a person reasonably relies on it to his detriment;
> (2) the spoliator entered into an agreement to preserve the evidence;
> (3) there has been a specific request to the spoliator to preserve the evidence; or
> (4) there is a duty to do so based upon a contract, statute, regulation, or some other special circumstance/relationship.

*Id. at 20* (citations omitted).

In determining whether a substantial part of the events or omissions giving rise to the claim occurred in Montana, the Court must "review the entire sequence of events underlying the claim[,]" *Mitrano*,

377 F.3d at 405 (citations and quotations omitted). EMC's involvement began when it provided Cross Petroleum, a Montana entity, with a policy of insurance for the subject pickup truck in Montana. Underberg, and TJ, were at all relevant times, citizens and residents of Montana. Following the collision, EMC, via written correspondence, email, and telephone, communicated with Cross Petroleum and Underberg, in Montana, about the pickup. *See ECF No. 8-1 at 3-4.* In terms of omissions, as noted above, Underberg alleges that EMC did not give Cross Petroleum, in Montana, an adequate opportunity to retain the pickup, and did not inform Underberg, in Montana, or others in TJ's family, that it intended to dispose of the pickup. Although EMC contests some of these allegations, it cannot reasonably be argued that they are irrelevant to Underberg's claim in light of the foregoing authority.

Also, in tort actions, "the locus of the injury [is] a relevant factor" in determining whether venue is proper. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001); *see also Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012), *rev'd on other grounds,* 134 S. Ct. 115, 1121 n. 5.

Here, although the actual tort of spoliation of evidence allegedly occurred in North Dakota, the injury Underberg may have suffered may be felt in Montana, where EMC represents there is pending a lawsuit by Underberg against the pickup's manufacturer.

Based on the foregoing, the Court concludes that a substantial part of the events or omissions giving rise to Underberg's claim occurred in Montana. Because Montana is not an improper venue for this action, EMC's motion to transfer venue necessarily fails.

## IV. Conclusion

Based on the foregoing, IT IS ORDERED that EMC's motion to transfer venue (*ECF No. 4*) is DENIED.

DATED this 14th day of April, 2016.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge